UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LATITUDE SERVICE COMPANY, INC. )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CLINTON C. REESE, )<br>)<br>Defendant/Third )<br>Party Plaintiff, )<br>)<br>v. )<br>)<br>BRAD LANKFORD )<br>)<br>Third Party Defendant. ) | CAUSE NO. 3:21-cv-00728-JD-MGG |

**AMENDED COMPLAINT**

Plaintiff, Latitude Service Company, Inc. ("Latitude Service" or "the Company"), by counsel, for its complaint against Clinton C. Reese ("Mr. Reese"), alleges, as follows:

Introduction

1. This is an action arising out of Mr. Reese's status, rights, and obligations as a shareholder of Latitude Service.

2. Latitude Service is a third party retirement plan administration firm specializing in quality retirement plan administration. Mr. Reese is a shareholder. The owners of Latitude Service are bound by certain restrictive covenants against competition, solicitation, and disclosure of company confidential and proprietary information. Mr. Reese, recently, erroneously has taken the position that he is no longer subject to any of those covenants or restrictions.

1

## The Parties, Jurisdiction, and Venue

3. Latitude Service is an Indiana corporation, formed on April 28, 2017 under its former name Imperium Holdings, Inc. ("Imperium Holdings"). Latitude Service is based in Plymouth, Indiana.

4. Mr. Reese, upon information and belief, resides in Cincinnati, Ohio. Mr. Reese is a shareholder in Latitude Service and certain affiliated entities. Mr. Reese, at all material times, was a shareholder of the Predecessor Entities (defined *infra*).

5. This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1332.

6. Preferred venue lies in this division pursuant to the Shareholder Agreement (defined *infra*).

## Latitude Service

7. On December 20, 2018, the Imperium Holdings Board of Directors and shareholders signed a Joint Written Consent to Resolution of the Board of Directors and Shareholders of Imperium Holdings, Inc. and the Boards of Managers and Sole Member of Niles Lankford Group, LLC, Pension Systems, LLC, Retirement Systems of Arizona, LLC, and Retirement Systems of California, LLC ("the Joint Resolution").

8. Pursuant to the Joint Resolution, on December 26, 2018, Imperium Holdings filed Articles of Amendment with the Indiana Secretary of State pursuant to which it changed its name to Latitude Service.

9. Pursuant to the Joint Resolution, Latitude Service, Niles Lankford Group, LLC, Pension Systems, LLC, Retirement Systems of Arizona, LLC, and Retirement

Systems of California, LLC adopted a Plan of Merger. Thereafter, on December 28, 2018, Latitude Service filed Articles of Merger (to be effective as of December 31, 2018) with the Indiana Secretary of State. Effective as of December 31, 2018, Niles Lankford Group, LLC, Pension Systems, LLC, Retirement Systems of Arizona, LLC, and Retirement Systems of California (collectively the "Merged Entities") merged with and into Latitude Service, with Latitude Service being the surviving entity ("the Merger"). A true and accurate copy of the Joint Resolution together with exhibits is attached hereto as Exhibit 1.

10. Mr. Reese signed the Joint Resolution in his capacity as a shareholder of Imperium Holdings.

11. One year prior to the Merger, on December 31, 2017, the shareholders of Niles Lankford Group, Inc., Pension Systems, Inc., and Retirement Systems of California, Inc. (collectively "the Predecessor Entities"), Imperium Holdings, and the Imperium Holdings shareholders collectively signed a Plan of Reorganization. A true and accurate copy of the Plan of Reorganization is attached hereto as Exhibit 2.

12. Pursuant to the Plan of Reorganization, the Predecessor Entities each were statutorily converted from existing as corporations to existing as limited liability companies, effective as of January 24, 2018, which respectively became the Merged Entities.

13. The shareholders of Latitude Service, shareholders of the Predecessor Entities and members of the Merged Entities have always been subject to contractual restrictive

covenants regarding competition, solicitation, and use of confidential information. These contractual restrictions are expressly set forth in a certain Shareholder Agreement of Niles Lankford Group, Inc., Pension Systems, Inc. & Retirement Systems of California, Inc., on or about October 1, 2014 ("Shareholder Agreement").  A true and accurate copy of the Shareholder Agreement is attached hereto as Exhibit 3.

14. Mr. Reese is a signatory to the Shareholder Agreement.  Exhibit 3 at p. 25.

15. Section 6.12 of the Shareholder Agreement, titled "Governing Law", provides:

> 6.12 Governing Law:   This Agreement shall be construed in accordance with the laws of the State of Indiana . . . Any controversy, claim or dispute arising out of or relating to this Agreement or the breach, termination, enforceability or validity of this Agreement, shall be brought in the courts of the State of Indiana, Marshall County, or, if it has or can acquire jurisdiction, any United States District Court sitting in St. Joseph, Indiana, and each of the Parties irrevocably submits to the exclusive jurisdiction of each such court in any such matter, waives any objection it may now or hereafter have to venue or to convenience of forum, agrees that all claims in respect of the matter shall be heard and determined only in such court and agrees not to bring any such matter arising out of or relating to this Agreement in any other court. . . .

## Fact Allegations

16. Each preceding paragraph is incorporated herein by reference.

17. On or about June 28, 2021, Mr. Reese, through counsel, informed Latitude Service that the restrictive covenants in the Shareholder Agreement do not govern his relationship as an owner with Latitude Service.  Mr. Reese's position is erroneous, incorrect, and contrary to the provisions that govern his rights and obligations to Latitude Service, as the ultimate successor in interest to the Predecessor Entities.

18. Article 5 of the Shareholder Agreement, titled "Non-Competition", provides in relevant part, as follows:

> 5.1 Each Shareholder shall not, at all times during the Restricted Period (as defined below), directly or indirectly including as a principal, agent, employee, owner, investor, lender or trustee) engage, anywhere within the Restricted Territory (as defined below), in a Competing Business (as defined below); provided that Lankford shall have the right to acquire, or form a new business, that may be a Competing Business, so long as Lankford gives each Shareholder of record (at the time of such acquisition or formation) ownership of such entity or business ("Affiliated Entity") in the same proportion as such Shareholder owns shares in the Corporations, and (b) any Shareholder may purchase or otherwise acquire up to (but not more than) five percent (5%) of any class of the securities of any entity (but may not otherwise participate in the activities of such entity) if such securities are listed on any national or regional securities exchange or have been registered under Section 12(g) of the Securities Exchange Act of 1934 as amended. A Shareholder's ownership of an Affiliated Entity shall not be deemed a breach of this Agreement. The Shareholders agree (in connection with the acquisition or formation of an Affiliated Entity) to execute and deliver an agreement substantially similar to this Agreement with respect to each Affiliated Entity in which they own an equity interest.
>
> For purposes of this Section 5, (1) a "Competing Business" is a business that engages to any extent in the design, installation, recordkeeping and/or annual administration or actuarial certification of qualified retirement plan as defined under IRS Sections 401(a), 403(b), or 457 plans, (2) "Restricted Period" means, with respect to each Shareholder, the period of time such Shareholder owns his or her shares of a Corporation, plus (in the case of a Selling Shareholder who has sold or transferred all of his or her shares of the Corporations for any reason other than for a Force-Out pursuant to Section 1.4 (whether to a permitted third party, the Corporations or the Remaining Shareholders)), two (2) years from the date of such sale, and (3) "Restricted Territory" means (A) for each Shareholder, anywhere in the United States for the period of time such Shareholder owns his or shares of the Corporation, . . .
>
> 5.2 Each Shareholder agrees that, at all times during his or her ownership of shares of a Corporation and for a period of two (2)

years following the termination of his or her share ownership, such Shareholder shall not (a) directly or indirectly induce any clients/customers of the Corporation to patronize any Competing Business; (b) directly or indirectly request or advise any client/customer of the Corporation to withdraw, curtail or cancel such client's/customer's business with the Corporation; (c) directly or indirectly disclose to any person, partnership, or corporation the names or addresses of any of the clients/customers of the Corporation; (d) directly or indirectly solicit the employment of any Corporation's employee(s) or employ a former Corporation's employee (other than the Shareholder himself or herself); (e) become employed by, become an independent contractor for, or otherwise enter into a business relationship with a client of the Corporation; or (f) in the case of a Selling Shareholder who has sold all of his or her shares of the Corporation pursuant to Section 1.2 (whether to a permitted third party, the Corporation or the Remaining Shareholders), become employed by, become an independent contractor for, or otherwise enter into a business relationship with a Competing Business within the Restricted Territory.

5.3   Because of the difficulty of measuring the economic loss suffered as a result of a violation of this Section, it is agreed that liquidated (that is, established) damages equal to two hundred percent (200%) of the previous twelve (12) months' fees/sales to that client/customer shall be paid by the breaching Shareholder to the non-breaching Corporation or Remaining Shareholders for each violation of the Agreement made under this Section.  In the event that customer/client has not, at the time of the breach, accumulated twelve (12) months' fees/sales, damages shall be apprised at the anticipated annual fees for the customer/client.  Each separate twelve (12) month period in which such representation, counseling, providing a service to or sales to or solicitation of the same occurs, shall be considered a separate violation for each spate client/customer.  Such sum shall thus be payable for each separate client/customer year of violations; the maximum on a per client/customer basis shall not exceed two hundred percent (200%) of billing/sales for the twelve (12) months prior to the first violation.  For breach of Section 5 by soliciting employment of a Corporation's employee, the liquidated damages shall be two (2) times the annual total compensation, including any commissions, of the employee for the previous twelve (12) month period.

19. Article 6, Section 6.6, of the Shareholder Agreement also restricts disclosure of certain Company information, providing, as follows:

> 6.6 <u>Disclosure of Information:</u> Each Shareholder recognizes and acknowledges that he or she will have access to certain confidential information of the Corporations and of entities affiliated with the Corporations and its Shareholders and that such information constitutes valuable, special and unique property of the Corporations, such other entities, and the Shareholders. For purposes of this Section, "confidential information" shall include, but not be limited to, customer names and customer lists, prices charged to customers and pricing and billing formulae and policies, all office manuals and forms, and any other documents, items and things used by the Corporations or the Shareholders which are designated as or known to be confidential or proprietary, regardless of whether such item is specifically marked or labeled as such. Except in connection with their duties as employees of a Corporation (as applicable), the Shareholders will not, during or after the period of time which such Shareholder owns shares of a Corporation, disclose any of such confidential information to any person, firm, corporation, association or other entity for any reason or purpose whatsoever, except to authorized representatives of a Corporation, its affiliated entities or the Shareholders. In the event of a breach or threatened breach by a Shareholder of the provisions of this paragraph, the Corporation and/or its non-breaching Shareholders shall be entitled to an injunction restraining the breaching Shareholder from disclosing, in whole or in part, such confidential information. Nothing herein shall be construed as prohibiting a Corporation and/or the non-breaching Shareholders from pursuing any other remedies available to it for such breach or threatened breach, including the recovery of damages from the breaching Shareholder.

20. Section 6.11 of the Shareholder Agreement, titled "Successors and Assigns", provides:

> 6.11 <u>Successors and Assigns:</u> The provisions of this Agreement shall be binding upon and inure to the benefit of the Parties and their respective personal representatives, heirs, successors and assigns (including any person who acquires any shares and agrees to be bound by the provisions hereof).

7

21. The Predecessor Entities are "Parties", as that term is defined in the Shareholder Agreement.

22. Latitude Service is the successor and assign of the Predecessor Entities and the Merged Entities, and as such is an intended third party beneficiary to the rights of the Predecessor Entities and Merged Entities in the Shareholder Agreement.

23. The Plan of Merger contemplated that all contractual rights of the Merged Entities would be assigned to Latitude Service. Section 2.4 of the Plan of Merger, titled "Further Assurances," provides in that regard as follows:

> Section 2.4.   Further Assurances. If at any time the Surviving Entity shall consider that any further assignment, assurance or other action is necessary or desirable to vest in the Surviving Entity the title to any property or right of any Merging Entity or otherwise to carry out the purposes of this Plan of Merger, the proper officers, managers, members and/or other agents of each Merging Entity shall execute and make all such proper assignments or assurances and take such other actions. The proper officers, members, managers, and/or other agents of Surviving Entity are hereby authorized in the name of each Merging Entity to take any and all such actions.

24. Section 2.4 provides Latitude Service with the right to require that Mr. Reese and the other owners of the Predecessor Entities and Merged Entities execute and make all other such proper assignments and assurances and to take such other actions as are required to assign, transfer and/or convey all rights of the Predecessor Entities and/or the Converted Predecessor Entities in, among other provisions, the Shareholder Agreement Restrictive Covenants memorialized in Article 5, and in the covenants of confidentiality contained in Article 6.

25. On June 28, 2021, Mr. Reese implicitly threatened to breach the restrictive covenants in Article 5 and Article 6, when, through counsel, he incorrectly took the position that those provisions were no longer in force or effect.

### Mr. Reese's Separation from Latitude Service

26. For several years prior to 2021, Mr. Reese was employed by Latitude Service as Sales Manager.

27. In April 2021, Latitude Service notified Mr. Reese that it intended to terminate his employment for non-performance and/or poor performance.

28. Latitude Service and Mr. Reese mutually desired a complete separation, and they began negotiations for Latitude Service to purchase Mr. Reese's shares in Latitude Service and several related entities.

29. After multiple proposals and counter proposals, Latitude Service and Mr. Reese reached an agreement on May 19, 2021 for the purchase of Mr. Reese's shares.

30. That same day, Latitude Service sent Mr. Reese a term sheet via e-mail containing the agreed upon terms and requested that Mr. Reese confirm that he agreed to the terms.

31. Mr. Reese responded via e-mail to Latitude Service's e-mail, "I agree with the terms listed in the attached PDF."

32. The agreed upon terms provided that Mr. Reese would voluntarily terminate his employment; that Latitude Service would purchase Mr. Reese's shares in all companies for $550,000, with $55,000 down payment, and the balance amortized over seven years with monthly payments calculated at 5% annual interest.

33. Latitude Service and Mr. Reese also agreed that Mr. Reese would remain on Latitude Service-provided health insurance for 90 days; that Latitude Service would assume Mr. Reese's promissory note owed to 1st Source Bank; and that both Latitude Service and Mr. Reese would issue letters stating that the separation was mutual and based on business direction and expectations.

34. Latitude Service and Mr. Reese also agreed to a number of non-competition covenants. Specifically, Mr. Reese agreed to no employee-raiding for three years; no contact with Latitude Service clients to terminate, change, or curtail services for three years; and no employment with another third party administrator company for 18 months. Latitude Service and Mr. Reese expressly provided, however, that Mr. Reese may seek employment with non-third party administrator companies.

35. On June 14, 2021, Mr. Reese revoked his acceptance of the terms of the separation agreement, purportedly pursuant to the Age Discrimination in Employment Act (the "ADEA").

36. The terms of Mr. Reese's separation set forth in the May 19, 2021 email and that he accepted did not include a release of any rights or claims he may have had under the ADEA. Consequently, the ADEA's revocation rights are inapplicable to the separation agreement contemplated between Latitude Service and Mr. Reese.

## Count I – Claim for Declaratory Relief

37. Each preceding paragraph is incorporated herein by reference.

38. This Court has the power to declare the rights, status and other legal relations of Latitude Service and Mr. Reese pursuant to Ind. Code § 34-14-1-1.

39. An actual controversy exists as to the rights, status and legal relations of Latitude Service and Mr. Reese.

40. Latitude Service is a "person" who may obtain a declaratory judgment pursuant to Ind. Code § 34-14-1-2.

41. The Shareholder Agreement, Joint Resolution, Plan of Merger and Articles of Merger are each contracts that "may be construed either before or after there has been a breach," as provided in Ind. Code §34-14-1-3.

42. Latitude Service is entitled to an award of attorney fees.

## Count II – Breach of Contract

43. Paragraphs 1 through 36 are incorporated herein by reference.

44. On May 19, 2021, Latitude Service and Mr. Reese reached a valid and enforceable agreement regarding his separation from Latitude Service and the sale of his shares in Latitude Service.

45. Mr. Reese's purported, but ineffectual, revocation of the separation agreement is a breach of the separation agreement.

46. Latitude Service will suffer irreparable harm from Mr. Reese's repudiation of the separation agreement and continued ownership of Latitude Service.

47. Latitude Service is entitled to specific performance of the separation agreement.

## Requested Relief

WHEREFORE, Latitude Service requests that this Court enter judgment finding that:

   a. Mr. Reese, at all material times, was bound, and is now bound, by the express provisions of Articles 5 and 6 of the Shareholder Agreement;

b. The terms and conditions of the Shareholder Agreement survived the conversion of the Predecessor Entities to the Merged Entities;

c. Pursuant to the Joint Resolution, Plan of Merger and Articles of Merger, Latitude Service is the successor in interest of the Predecessor Entities and the Merged Entities, with the right to enforce the provisions in the Shareholder Agreement, including but not limited to Article 5 and/or Article 6.

d. The restrictive covenants, terms and conditions contained in Article 5 and Article 6 of the Shareholder Agreement, respectively, are enforceable under Indiana law;

e. As an owner of Latitude Service, Mr. Reese was and remains bound by the covenants, terms and conditions contained in Article 5 and Article 6, of the Shareholder Agreement.

f. The separation agreement is a valid and enforceable contract between Latitude Service and Mr. Reese and requiring Mr. Reese to perform pursuant to the separation agreement.

g. Latitude Service is entitled to an award of reasonable attorney fees.

Respectfully Submitted,

/s/ *Pete S. French*
Peter S. French, #16716-49
J. Mitchell Tanner, #35905-49
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, IN  46204
Phone:  317.713.3500
Facsimile:317.713.3699
pfrench@taftlaw.com
mtanner@taftlaw.com

*Attorneys for Plaintiff/Counterclaim Defendant and Third-Party Defendant*

## CERTIFICATE OF SERVICE

I certify that on February 25, 2022,  I electronically filed and served the foregoing document upon all counsel of record via CM/ECF.

/s/ *Pete S. French*
Pete S. French