UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LATITUDE COMPANY, INC., <br><br> Plaintiff, <br><br> v. <br><br> CLINTON C. REESE, <br><br> Defendant/Third Party Plaintiff. <br><br> v. <br><br> BRAD LANKFORD; NORTH AMERICAN KTRADE ALLIANCE, LLC; RETIREMENT SYSTEMS OF AMERICA, LLC; HIGHLAND MANAGEMENT GROUP, INC.; and EIRA, LLC, <br><br> Third Party Defendants. | Case No. 3:21-CV-728 JD |

**OPINION AND ORDER**

Plaintiff Latitude Service Company, Inc. sued Defendant Clinton Reese in state court seeking a declaratory judgment binding Mr. Reese to the terms of a 2014 shareholder agreement and a separate agreement Mr. Reese allegedly entered into to sell his shares in Latitude and other Latitude-affiliated entities in the spring of 2021. (DE 24.) Mr. Reese removed the case to this Court and filed several iterations of a combined answer, counterclaim, and third-party complaint. Mr. Reese's filings denied that he was subject to the prior agreements and brought claims of his own seeking relief from Latitude and other third-party defendants for their attempts to, among other things, limit his business opportunities and withhold money from him that he alleges he was owed as a shareholder of Latitude and the other entities. (DE 26; DE 34.) The parties' litigation has yielded a variety of motions to date. This order resolves three of the currently

pending motions. First, it addresses a request to remand from Latitude and the Third-Party Defendants. Second, it addresses a motion for temporary restraining order that Mr. Reese filed.[1] Finally, the Court explains very briefly in the concluding section of this order why its resolution of the motion to remand moots Latitude and the Third-Party Defendants' pending motion to stay.

**A.       Factual Background**

The background for this lawsuit is somewhat complex and includes agreements between a variety of individuals and business entities over the years in the form of formation documents, mergers, and other business documents. The Court will not go far into this history for purposes of this order, because a full recounting of the history is not necessary to resolve the issues on which this order focuses. Instead, the Court briefly notes the identities of the interested parties and their disputes that led to the filing of the motions this order covers.

Mr. Reese was a Latitude employee and was involved in various agreements with other individuals, including Third-Party Defendant Brad Lankford, that led to the combination of several prior business entities into what is today Latitude, a third-party retirement plan administration firm. The 2014 shareholder agreement Latitude is trying to enforce on Mr. Reese is one such agreement. Mr. Reese claims to hold just under 5% of the shares in Latitude as well as a similar percentage of shares in other related companies, several of which Mr. Reese has now named as third-party defendants. Mr. Reese left his employment with Latitude in the late spring of 2021 and the parties dispute how his leaving affected his shares in Latitude and the affiliated

---

[1] The Court interprets Mr. Reese's motion for a temporary restraining order as a motion for preliminary injunction here given that Mr. Reese's request contained in the motion more closely resembles a request for a preliminary injunction. *See Decker v. Lammer*, 2022 WL 125429, at *2 (7th Cir. 2022) (citing a request for relief that would last an unspecified amount of time and a non-ex parte proceeding as suggesting a preliminary injunction instead of a temporary restraining order). This treatment is immaterial to the Court's consideration of the issues, however, because "[t]he standards for granting a temporary restraining order and preliminary injunction are the same." *USA-Halal Chamber of Comm., Inc. v. Best Choice Meats, Inc.*, 402 F. Supp. 3d 427, 433 n.5 (N.D. Ill. 2019).

companies. Mr. Reese maintains that he is still a shareholder, but Latitude has brought a claim for breach of contract in which it alleges that Mr. Reese previously agreed to sell his shares back as part of separation agreement the parties reached near the time Mr. Reese stopped working with Latitude. (DE 24 ¶¶ 43–47.) The issue of whether Mr. Reese remains a shareholder is thus one the Court will have to resolve as this lawsuit proceeds.

Latitude filed its complaint against Mr. Reese in state court and Mr. Reese ultimately removed the case based on an assertion of complete diversity between himself and Latitude. (DE 1.) At the time of removal, Latitude was the sole plaintiff, Mr. Reese was the sole defendant, and Mr. Lankford was the sole third-party defendant in the case. (*Id.*) After removal, Mr. Reese proceeded to add more third-party defendants, a mix of Latitude-affiliated corporations and LLCs, to the case. (DE 26; DE 34.) He alleged the new third-party defendants were implicated to certain degrees in the disputes that Latitude's complaint raised and were additionally subject to certain legal claims he had based on his unfair treatment since leaving his employment with Latitude.

Latitude and the Third-Party Defendants eventually moved to remand this case back to state court, arguing that Mr. Reese, who is a member of several of the third-party defendant LLCs, destroyed complete diversity when he brought those LLCs into the case after removal. (DE 28; DE 35.) That motion has remained pending for some time now and eventually led Latitude and the Third-Party Defendants to ask that the court grant a stay on briefing a subsequent motion not addressed in this order that Mr. Reese had filed so that the Court could first resolve the jurisdictional issues the remand motion raised. (DE 44.)

Most recently, Mr. Reese filed a motion for temporary restraining order and expedited hearing to try to stop an upcoming Latitude shareholder meeting from taking place. (DE 45.) Mr.

Reese received notice from another Latitude shareholder that Latitude, Mr. Lankford, and Third-Party Defendant Highland Management Group had scheduled the special shareholder meeting for September 30, 2022, to vote on terms for a merger between Latitude and another apparently associated entity. (DE 46-3.) Mr. Reese's motion is based on his belief that the meeting is solely "an effort to unlawfully seize [his] entire ownership interest" in Latitude. (DE 46 at 1.) Latitude, Mr. Lankford, and Highland opposed Mr. Reese's motion (DE 49) and Mr. Reese has had an opportunity to address the parties' opposition in a reply brief (DE 50).

**B.     Discussion**

Because Latitude and the Third-Party Defendants' motion to remand and Mr. Reese's motion for temporary restraining order cover different types of relief with different legal standards, the Court forgoes a traditional standard of review section in this order and instead recounts the relevant standards of review, as necessary, during its consideration of the merits of each motion below. With that understanding, the Court begins its analysis with Latitude and the Third-Party Defendants' motion to remand because the outcome of that motion affects whether the Court has jurisdiction to proceed to the merits and consider Mr. Reese's motion to enjoin the scheduled shareholder meeting. *See GE Betz, Inc. v. Zee Co.*, 718 F.3d 615, 622 (7th Cir. 2013) ("Subject-matter jurisdiction is our foremost concern; without it, the court cannot proceed at all in any cause.") (quotations and citations omitted).

*1.     Motion to remand*

Latitude and the Third-Party Defendants moved for remand, arguing that Mr. Reese's addition of non-diverse third-party defendants after the case was removed destroyed the diversity jurisdiction on which removal to this Court was originally based. (DE 28; DE 35 at 3–8.) Mr.

4

Reese responded to the motion by arguing that Latitude and the Third-Party Defendants' motion fails because the Court has supplemental jurisdiction over the non-diverse third-party defendants. (DE 31.) None of the parties questioned whether the original removal of the case to this Court was proper or whether the third-party LLCs of which Mr. Reese is a member are in fact non-diverse. Instead, they focused their arguments solely on whether Mr. Reese destroyed jurisdiction by adding the non-diverse third-party defendants after removal. *See* (DE 28; DE 31; DE 35). Nonetheless, the Court briefly explains why the original removal was proper before resolving whether the addition of the third-party defendants destroyed diversity.

At the time that Mr. Reese removed the case from Indiana state court, the case was pending with Latitude as the sole plaintiff, Mr. Reese as a defendant and third-party plaintiff, and Mr. Lankford as a third-party defendant.[2] (DE 1-2.) Mr. Reese removed the case based on alleged diversity jurisdiction, arguing that Latitude's complaint was properly removable pursuant to 28 U.S.C. § 1332(a), § 1441(b), and § 1446(b)(2)(C) because, at its core, it was a civil action between Latitude, an Indiana corporation, and Mr. Reese, an Ohio citizen, with an amount in controversy exceeding $75,000.[3] *See* (DE 1 ¶ 11.) As Mr. Reese alluded to in his notice of removal, § 1441 allows a defendant to remove a civil action brought in a state court to a federal court embracing the place where the state action is pending if the federal court would have had original jurisdiction over the action. (DE 1) (citing 28 U.S.C. §§ 1332(a); § 1441(a)). The Court finds that, given Mr. Reese's Ohio citizenship and Latitude's status as an Indiana corporation,

---

[2] While this issue was never raised, the Court notes that courts have recognized that a third-party defendant does not qualify as a "defendant" for purposes of § 1441 removal procedures. *See Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1749 (2019); *Arrow Fin. Servs., LLC v. Massil*, 2009 WL 348553, at *4 (E.D.N.Y. Feb. 11, 2009) (collecting cases) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941)).

[3] The Court notes that while Mr. Reese originally referred to himself as an Ohio "resident," he has made clear in subsequent briefing that he is an Ohio "citizen," and Latitude and the Third-Party Defendants have not disputed Mr. Reese's claimed Ohio citizenship in any briefing. *See* (DE 28 at 4–5; DE 34 ¶ 1.)

(DE 34 ¶ 1; DE 36 at 4–5), there was complete diversity at the time of removal and thus proper jurisdiction in this Court.

The Court therefore moves to consider whether Mr. Reese destroyed diversity by later adding the non-diverse, third-party defendants to the case or whether the Court can maintain jurisdiction over the case by exercising supplemental jurisdiction. *See* 28 U.S.C. 1367 ("district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties"); *Sanchez & Daniels v. Koresko*, 503 F.3d 610, 614 (7th Cir. 2007) ("Two claims are part of the same controversy if they derive from a common nucleus of operative facts.").

The Court finds that Mr. Reese's addition of the third-party defendants did not defeat jurisdiction here. As Latitude and the Third-Party Defendants acknowledge, the "general rule" is that "diversity jurisdiction is determined at the time the case is filed, and subsequent acts of the parties do not affect the court's subject matter jurisdiction." *Perez v. Arcobaleno Pasta Machines, Inc.*, 261 F. Supp. 2d 997, 999–1000 (N.D. Ill. 2003); *see also In re Burlington N. Santa Fe Ry. Co.*, 606 F.3d 379, 380 (7th Cir. 2010) ("The well-established general rule is that jurisdiction is determined at the time of removal, and nothing filed after removal affects jurisdiction."). However, as the Seventh Circuit and other courts have recognized, when a party has been joined after the case has been removed, a court should turn to 28 U.S.C. § 1447, the statute that addresses post-removal procedures, to ensure jurisdiction remains. *Perez*, 261 F. Supp. 2d at 1000 (citing *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1492 (7th Cir. 1996)). That is what Latitude and the Third-Party Defendants have asked the Court to do here.

(DE 35 at 5–8.) But in looking to § 1447, the Court sees nothing that would suggest that Mr. Reese, a defendant, would defeat diversity jurisdiction by adding non-diverse third parties to the case after removal.

The operative language in § 1447 on which Latitude and the Third-Party Defendants relied was § 1447(e)'s statement that "[i]f after removal the *plaintiff* seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e) (emphasis added); (DE 35 at 6–8) (citing § 1447(e) and *Perez*, 261 F. Supp. 2d at 998–1000). The operative word in § 1447(e) is the one the Court emphasized above, "plaintiff." Latitude and the Third-Party Defendants seem to have ignored that important caveat to the statute and thus failed to explain why the statute, which by its language is restricted only to additions by a plaintiff post-removal, should apply to Mr. Reese, a defendant. *See* (DE 28; DE 35.) The Court finds nothing in the statute to suggest that Mr. Reese destroyed jurisdiction by adding the additional parties in his capacity as the defendant in the case or that the Court is precluded from exercising supplemental jurisdiction over the claims against the Third-Party Defendants.

That finding has support from other courts confronted with similar situations, each of which have recognized, consistent with Mr. Reese's argument (DE 31 at 6–9), that a district court can exercise supplemental jurisdiction over third-party claims by a defendant against a non-diverse third-party so long as the court had diversity jurisdiction over the original matter that spawned the lawsuit. *See Daly v. Demes*, 1990 WL 205257, at *2 (N.D. Ill. Dec. 4, 1990) ("Generally, when the third-party claim involves *defendant's* claim as a third-party plaintiff against the third-party defendant, the third-party claim falls within the doctrine of ancillary jurisdiction.") (emphasis in original); *Abbott Lab'ys v. CVS Pharmacy, Inc.*, 290 F.3d 854, 858

7

(7th Cir. 2002); *Stromberg Metal Works, Inc. v. Press Mech., Inc.*, 77 F.3d 928, 931 (7th Cir. 1996) (citing *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176 (7th Cir. 1993)); *see also Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374–77 & n.18 (1978) (holding that whereas plaintiff's claims against non-diverse parties destroyed diversity jurisdiction, ancillary (now supplemental) jurisdiction supported defendant's counterclaims and third-party claims against non-diverse parties); *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 726–27 (2d Cir. 2000); *Barbagallo v. Marcum LLP*, 820 F. Supp. 2d 429, 438 (E.D.N.Y. 2011); Lisa Combs Foster, *Section 1447(e)'s Discretionary Joinder and Remand: Speedy Justice or Docket Clearing?*, 1990 Duke L.J. 118, 138–39 (1990) (explaining § 1447 "addresses neither joinder by the defendant of a nondiverse party (as in impleader) nor joinder by the plaintiff or the defendant of another plaintiff (cross-claim or counterclaim) . . . [b]ecause, as the Supreme Court has recognized, the exercise of ancillary jurisdiction over nonfederal claims [under these circumstances] has often been upheld [and] a legislative solution was unnecessary") (internal quotations omitted). Bolstered by that support, the Court finds that Mr. Reese's position as a defendant adding non-diverse third-party defendants to the case after removal did not defeat jurisdiction.

 Mr. Reese is not free of jurisdictional constraints yet though, because the Court must still have supplemental jurisdiction over the claims against the non-diverse Third-Party Defendants to keep this lawsuit in federal court. Even a quick review of the claims shows strong support for the exercise of supplemental jurisdiction, however, because the claims against the Third-Party Defendants arise from the same case or controversy as the originally filed claims. "Two claims are part of the same case or controversy if they derive from a common nucleus of operative facts" and a "loose factual connection between the claims is generally sufficient." *Koresko*, 503 F.3d at 614 (citing *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995)).

8

Mr. Reese's claims against the Third-Party Defendants are closely related to the claims that Latitude originally brought against Mr. Reese in that all of the claims center on what the legal relationship is between Mr. Reese, Latitude, and the Third-Party Defendants. Specifically, Mr. Reese has sued Latitude, Mr. Lankford, and the other Third-Party Defendants to, among other things, enforce his rights as a member/shareholder in the various entities and to recover the owner distributions he believes he is owed from those entities. (DE 31 at 8) (citing (DE 26 ¶¶ 3–4, 47–48, 50–57, 59–62, 64–67, 69–70)). The Court finds that resolving those issues will necessarily involve resolving Latitude's own claims against Mr. Reese that require determining whether Mr. Reese is bound to the terms of the prior, 2014 shareholder agreement as well as whether Mr. Reese retains a shareholder interest in Latitude and the third-party defendant entities. (DE 24.) The interrelated nature of these issues, all of which, to at least some extent, are based on adjudicating the relationship between Mr. Reese, Latitude, and the other Latitude-affiliated entities, leads the Court to find that the issues arise from a common nucleus of operative fact and support exercising supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Therefore, the Court finds that Mr. Reese did not destroy the Court's diversity jurisdiction over this lawsuit by adding the non-diverse third-party defendants after removal and that remand is unnecessary.

   2.   *Motion for temporary restraining order*

Having found that it has jurisdiction to address the merits of this lawsuit, including the third-party claims that Mr. Reese brought, the Court now moves to Mr. Reese's request for relief in the form of enjoining Latitude, Highland, and Mr. Lankford from holding the special shareholder meeting to approve merger terms scheduled for September 30, 2022. Before beginning its analysis, the Court notes that Mr. Reese did request that the Court hold an

9

expedited hearing on the issues raised in his motion for a temporary restraining order. (DE 45.) The Court rejects Mr. Reese's request. The parties have had a full opportunity to brief the relevant issues surrounding the necessity of an injunction, (DE 46; DE 49; DE 50), and, after reviewing the parties' briefing and arguments, the Court finds no issues, evidentiary or otherwise, that would necessitate a hearing. The Court thus proceeds with its analysis based on the parties' arguments in their briefing.

A preliminary injunction[4] "is an extraordinary and drastic remedy" and "one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). To obtain a preliminary injunction, a party like Mr. Reese must show that: "(1) absent preliminary injunctive relief, he will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) he has a reasonable likelihood of success on the merits." *Tully v. Okeson*, 977 F.3d 608, 612–13 (7th Cir. 2020), *cert. denied*, 141 S. Ct. 2798 (2021). If the movant meets those threshold requirements, a court must then "consider the balance of harms between the parties and the effect of granting or denying a preliminary injunction on the 'public interest.'" *Id.* at 613. Mr. Reese runs into several problems that keep the Court from finding that a preliminary injunction is appropriate here.

First, as Latitude, Highland, and Mr. Lankford noted in their response to Mr. Reese's motion (DE 49 at 6), Indiana law precludes Mr. Reese, as an alleged shareholder, from enjoining the scheduled shareholder meeting. *See* Ind. Code § 23-1-44-8. As this and other courts have

---

[4] The Court again notes that while Mr. Reese's motion was titled as if Mr. Reese was asking for a temporary restraining order, the text of the motion makes clear he is actually requesting an injunction to prevent the scheduled shareholder meeting from taking place. (DE 46.) Additionally, the standards for a temporary restraining order and preliminary injunction are the same. *Best Choice*, 402 F. Supp. 2d at 433 n.5.

held, the Indiana Dissenters' Rights Statute "provides the exclusive remedy for minority shareholders challenging a proposed merger." *Hipps v. Biglari Holdings, Inc.*, 136 N.E.3d 629, 644 (Ind. Ct. App. 2019) (citing Ind. Code § 23-1-44-8); *Orlando v. CFS Bancorp, Inc.*, 2013 WL 5797624, at *4 n.2 (N.D. Ind. Oct. 28, 2013) ("The Indiana Dissenter's Rights Statute prohibits dissenting shareholders, objecting to the terms of a merger, from challenging or enjoining the proposed merger itself."); *Shepard v. Meridian Ins. Grp.*, 137 F. Supp. 2d 1096, 1102 (S.D. Ind. 2001) ("Section 8(c) bars any request for additional relief, including injunctive relief, in those circumstances."). That bar reflects the "legislature's clear policy decision . . . to minimize legal disruptions of transactions approved by a majority of shareholders." *Shepard*, 137 F. Supp. 2d at 1105. While the statute does not allow shareholders to seek an injunction, it does lay out a detailed system by which shareholders opposed to the direction the corporation is taking can require the corporation to buy their shares at a fair value. *See Hipps*, 136 N.E.3d at 644 (citing 20 IND. PRAC. Business Organizations § 43.1 (2019)). In that way, the statute allows a dissenting shareholder to withdraw from the corporation while permitting the corporation to continue with those shareholders agreeable to the changes. *Id.*

Mr. Reese acknowledged § 23-1-44-8(c)'s bar on injunctions in his reply, but he still argued that the statute should not prevent him from enjoining the proceedings. Mr. Reese based his argument on the fact that there is an ongoing dispute between himself, Latitude, Highland, and Mr. Lankford as to whether he remains a shareholder with shareholder rights under the statute. (DE 50 at 2) ("Latitude's primary arguments are completely negated by the fact that the parties are currently litigating the issue of whether Reese is even a 'shareholder' of Latitude and Highland."). While the Court understands Mr. Reese's argument and the fact that the issue of whether he is a shareholder is something that will likely have to be resolved in this lawsuit, the

11

Court does not see how that unresolved dispute would cause the statutory bar to not be a relevant consideration here. If Mr. Reese is still a shareholder, as he claims he is, the statute clearly bars him from enjoining the proceedings. *See* Ind. Code § 23-1-44-8; *Orlando*, 2013 WL 5797624 at 4 n.2; *Shepard*, 137 F. Supp. 2d at 1102; *Hipps*, 136 N.E.3d at 644. And if he is not a shareholder because, as Latitude, Highland, and Mr. Lankford have argued, he agreed to sell his shares in the spring of 2021, he would have no actionable interest in enjoining the shareholder meeting because he would no longer have any shares in the merging companies. Thus, no matter how his shareholder status is resolved, he would be unable to receive the injunctive relief he has requested.

While the Court finds that the Indiana statute provides an effective reason to deny Mr. Reese's injunction request, it also finds that Mr. Reese has failed to show an injunction would be necessary even if the Indiana statutory scheme did not exist. The primary problem for Mr. Reese is that he has failed to demonstrate that he faces inadequate legal remedies or irreparable harm if the shareholder meeting is allowed to take place. *See Tully*, 977 F.3d at 612–13. In short, any harm Mr. Reese may suffer as a result of the meeting can be adequately addressed at a later date through monetary damages, a concept Mr. Reese never discussed despite Latitude, Highland, and Mr. Lankford devoting significant time to it in their response. (DE 49 at 7–10; DE 50); *see also Northern California Power Agency v. Grace Geothermal Corp.*, 469 U.S. 1306, 1306 (1984) (holding that the availability of an adequate remedy at law, such as monetary damages, renders injunctive relief inappropriate); *Orr v. Shicker*, 953 F.3d 490, 502 (7th Cir. 2020) (the movant must show a "harm that cannot be repaired and for which money compensation is inadequate"); *Dos Santos v. Columbus-Cuneo-Cabrini Medical Center*, 684 F.2d 1346, 1349 (7th Cir. 1982)

(holding that if an injury can be fully redressed by an award of monetary damages, it is not "irreparable").

As the Court discussed above, there are still-pending issues in this case as to whether Mr. Reese remains a shareholder, whether Mr. Reese is subject to a 2014 shareholder agreement Latitude is trying to enforce, and whether Latitude and the Third-Party Defendants have been interfering with Mr. Reese's business and denying him distributions since he stopped working with Latitude. The Court cannot find that the scheduled shareholder meeting will affect those issues in a material way such that Mr. Reese will be unable to seek an adequate remedy, through monetary damages, for the harms he thinks he is facing.

For example, if the Court eventually determines that Mr. Reese is still a shareholder, he would be entitled to the sale price of his shares as disclosed in the terms of the planned merger to be voted on during the special shareholder meeting (DE 46-3 at § 3.02) (giving the agreed price-per-share that shareholders will receive if the merger is approved). And if Mr. Reese is unhappy with those terms, as it appears he is given his filing of the instant motion and his classification of the terms as an attempt to seize his shares (DE 46 at 1), he can preemptively exercise his statutory rights as a dissenting shareholder, subject to a later determination by the Court that he did in fact remain a shareholder, so that he can have access to the statutory process Indiana created for dissatisfied shareholders in situations like this and a chance to argue for what he thinks is the fair value of his shares. *See* (DE 46-3 at § 3.04) (explaining that dissenting shareholders can exercise their statutory rights); *Shepard*, 137 F. Supp. 2d at 1102 (the "judicial appraisal proceeding under the dissenters' rights statute to determine 'fair value' for the shares pursuant to Ind. Code § 23-1-44-19 . . . provides an adequate remedy if a wrong is proven, and Section 8(c) bars any request for additional relief, including injunctive relief, in those

circumstances"). In either situation, Mr. Reese is not being denied legal remedies or facing irreparable harm. Further, if Mr. Reese is ultimately determined to have agreed to sell his shares through the 2021 separation agreement Latitude is attempting to enforce, Mr. Reese would receive compensation for his shares in line with the agreement terms, and the Court has no basis to find that the scheduled shareholder meeting would affect those terms in any way. Given these alternatives, the Court cannot find the irreparable harm or inadequate legal remedy that Mr. Reese has insisted exists.

More fundamentally though, even if the Court were to agree with Mr. Reese that Latitude, Highland, and Mr. Lankford were "conduct[ing] a shareholder meeting and vote to seize Reese's ownership interest, against his will and consent, before the substantive claims and contract issues can be addressed and adjudicated" (DE 46 at 7), it could not find an injunction was necessary. In accepting Mr. Reese's premise, the Court would have to accept Mr. Reese's arguments that the shareholder meeting is being held to divest him of his shares without compensation (which the Court finds unsupported based on the text of the terms of merger Mr. Reese attached to his own briefing, *see* DE 46-3 at 4–9), and that Latitude is acting contrary to the 2014 shareholder agreement it is trying to enforce (which again the Court finds is based on a clear misreading of the terms of the agreement Mr. Reese attached to his briefing, *see* DE 46-2 and DE 49 at 11–13). (DE 46 at 7–10; DE 50 at 4–5.) Even accepting those premises, the Court would ultimately find that Mr. Reese's claimed harm of lost shares could be adequately remedied at a later date with monetary damages to compensate him for the lost shares' value. *See Shepard*, 137 F. Supp. 2d at 1113; *Orlando*, 2013 WL 5797624 at *5 (holding that a party "may believe that monetary damages are less preferable" but that the availability of monetary damages

"typically constitutes an adequate remedy at law" in cases where shares and shareholder votes are in dispute).

Additionally, while it is not dispositive on its own, the Court would also note the fact that Mr. Reese's request to enjoin the shareholder meeting would run up against an imbalance of harm and be detrimental to the public interest. If the Court were to enjoin the shareholder meeting, the companies that have carefully worked to consummate the merger would be precluded from executing it and would stand to lose a significant amount of money and future business opportunities. (DE 49 at 17) (asking for a $2 million security to protect the companies' interest in the merger and stating an injunction would cost the parties "a significant amount of money"). Any loss to the companies and the other shareholders would likely be far greater than the loss Mr. Reese would experience in the near-term if his sub-5% share interest was impaired, which again the Court, for the reasons explained above, finds is unlikely to occur. Further, enjoining the shareholder meeting and the potential to execute the merger would harm the public interest by detracting from the Indiana legislature's clear interest, through § 23-1-44, in minimizing legal disruptions to transactions that a majority of shareholders approve, *see Shepard*, 137 F. Supp. 2d at 1105.

Given its conclusions above, the Court finds that Mr. Reese has failed to make a clear showing that injunctive relief is required or appropriate under the circumstances. *Mazurek*, 520 U.S. at 972; *Tully*, 977 F.3d at 612–13. If Mr. Reese remains concerned about the shareholder meeting, it appears his best option at this time is to assert the rights as a dissenting shareholder that he currently believes he has and then continue to litigate this case to straighten out his status as a shareholder, his need to abide by the terms of the 2014 shareholder agreement, and his claims that he has been harmed by Latitude and the Third-Party Defendants.

## C.     Conclusion

For the foregoing reasons, the Court DENIES Latitude's and the Third-Party Defendants' Motion to Remand (DE 28) and DENIES Defendant/Third-Party Plaintiff Clinton Reese's Second Motion for Temporary Restraining Order (DE 45). Additionally, because the Court has now resolved the jurisdictional issues raised in Latitude's and the Third-Party Defendants' Motion to Remand, the Court DENIES AS MOOT the Defendants' Motion to Stay (DE 44) briefing on Mr. Reese's separately filed Motion for Temporary Restraining Order.[5]

SO ORDERED.

ENTERED: September 27, 2022

                                              /s/ JON E. DEGUILIO
                                              Chief Judge
                                              United States District Court

---

[5] The sole basis for the Motion to Stay was that the Court, at the time the motion was filed, had yet to resolve the jurisdictional issues raised in Latitude's and the Third-Party Defendants' Motion to Remand. (DE 44.)